CHARLES WEYL AND EDWARD S. WEYL, EXECUTORS AND TRUSTEES OF ESTATE OF MAURICE N. WEYL, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88527. Promulgated October 12, 1938.

*Gilbert J. Kraus, Esq.*, for the petitioners.
*T. F. Callahan, Esq.*, for the respondent.

854

OPINION.

BLACK: The only issue in this proceeding is whether or not the income tax return of Maurice N. Weyl for the year 1930, filed March 10, 1931, was false and fraudulent with intent to evade tax. If it was not, then the statute of limitations has run and bars the assessment and collection of the deficiency. If it was filed with a false and fraudulent intent to evade tax, then the statute of limitations has not run. See sec. 276 (a), Revenue Act of 1928.

The burden of proof to sustain fraud is upon the Commissioner, and he assumed that burden at the hearing and offered evidence to

sustain it. Counsel for respondent argues in his brief that the decedent, Maurice N. Weyl, did not make a bona fide sale of the securities in question in December 1930 and therefore his claim for losses on sales which were not really made amounts to fraud and deceit and establishes that decedent's income tax return was false and fradulent with intent to evade tax.

Although we have found in our findings of fact that the income tax return of Maurice N. Weyl was false and fraudulent with intent to evade tax, we do not agree with respondent that decedent did not make sales of the stocks in question in December 1930. He unquestionably did make these sales on the dates set out in our findings, but on the very same days that the stocks were sold decedent purchased like quantities of the same stocks through the use of the name of his secretary, Margaret M. Halbert.

This fact decedent did not disclose in his income tax return filed March 10, 1931. If he had done so, it would immediately have brought into play section 118 of the Revenue Act of 1928, which reads as follows:

In the case of any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition, no deduction for the loss shall be allowed under section 23 (e) (2) of this title; nor shall such deduction be allowed under section 23 (f) unless the claim is made by a corporation, a dealer in stocks or securities, and with respect to a transaction made in the ordinary course of its business. If such acquisition or the contract or option to acquire is to the extent of part only of substantially identical property, then only a proportionate part of the loss shall be disallowed.

Now of course it is perfectly true that if Margaret M. Halbert had been the real purchaser of these stocks for her own beneficial ownership on the dates in December 1930 detailed in our findings, decedent Maurice N. Weyl would have been entitled to take the losses claimed on his return and certainly he would not have been guilty of any fraud, because, as we have already pointed out, he made bona fide sales of these stocks through the New York and Philadelphia stock exchanges to purchasers who are unknown to us.

But Margaret M. Halbert was not the real purchaser of the stocks which were purchased in her name. She was a witness at the hearing and the substance of her testimony is that, at or about the time decedent made the sales of the stocks in question, he told her that he was wanting to make some sales to reduce his taxes and asked her for the use of her name in helping to put through the trans-

actions. To this she gave her consent. She testified that she did not put up any of her own money; that Weyl provided the money with which the stocks were purchased; and that when the same stocks were sold for her account, on January 22, 1931, the check for $32,011.50 which was received from the brokers in settlement of the proceeds from the sale was immediately endorsed over by her to Maurice N. Weyl. That check is in evidence and corroborates Miss Halbert's testimony. Unfortunately Weyl is dead and we do not have the benefit of his version of the transactions. Cf. *L. Schepp Co.*, 25 B. T. A. 419. We are convinced however that Miss Halbert's testimony was truthful and that, notwithstanding that the shares of stock were purchased in her name, she was not the real beneficial owner thereof; that the real purchaser was Maurice N. Weyl, himself, and this fact he did not disclose to the Commissioner in his income tax return for 1930.

Counsel for petitioners concedes that under the facts established at the hearing, section 118 of the Revenue Act of 1928, known as the wash sales provision, would prevent petitioners' decedent from taking a deduction for any loss on the sales in question, but he contends that is a technical provision of the law with which respondent has not proved decedent was familiar and that bad faith should not be imputed to decedent because he did not disclose on his income tax return the complete facts, citing in support of his contention a memorandum opinion of the Board which was based upon *James Nicholson*, 32 B. T. A. 977, and *Arthur M. Godwin*, 34 B. T. A. 485.

We are not impressed by this argument, in view of all the facts which are before us. The facts show that on January 22, 1931, shortly after the 30-day period prescribed in section 118 had expired, the transactions of December 5, 8, and 10, 1930, were reversed and the stocks were sold in the name of Margaret M. Halbert and the same number of shares in the same corporations were acquired by Maurice N. Weyl. This indicates to our satisfaction that Maurice N. Weyl was well aware of the provisions of section 118 of the Revenue Act of 1928. As we have already stated, if the purchases made in the name of Margaret M. Halbert had been purchases for her own individual ownership, then section 118 of the Revenue Act of 1928 would not apply and decedent would be entitled to the loss deduction claimed. But on the facts we hold that Margaret M. Halbert's so-called purchases in December of 1930, engineered and put through by Weyl himself, were not what they purported to be and Weyl was the real purchaser of the stocks and not Margaret M. Halbert, and therein the taxpayer runs afoul of the fraud provisions of the statute.

A taxpayer has the right to minimize his taxes by every legitimate means open to him, but he must not endeavor to do it by transactions which are not what they purport to be. In *Drawoh, Inc.*, 28 B. T. A. 666, we said:

While it is of course lawful for taxpayers to use means and methods which are legal and not tainted with fraud to avoid taxes, cf. *Brillon* v. *State of Wisconsin*, 240 U. S. 625; *Isham* v. *United States*, 17 Wall 496, it is never lawful for taxpayers to use methods of concealment and deception to evade taxes. It is on the use of the latter methods that taxpayers run afoul of the fraud penalties * * *.

On the evidence, we must conclude that the reason for the decedent's acquiring the same number of shares in the same corporations as the ones he sold, in the name of his secretary, Margaret M. Halbert, instead of his own name, was to evade the application of section 118 of the Revenue Act of 1928, the wash sales provision of the act. This action on his part, we think, amounts to fraud, and his failure to disclose the complete facts in his income tax return for 1930 amounted to the filing of a false and fraudulent return, with intent to evade tax. Cf. *Robert Wilson Carter*, 36 B. T. A. 598; *Sol H. Goldberg*, 36 B. T. A. 44; affd., 100 Fed. (2d) 601; *L. Schepp Co.*, 25 B. T. A. 419.

The authorities cited by petitioners in their brief, we think, are distinguishable on their facts.

*Decision will be entered for the respondent.*